## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

MAGDALENA DIAZ,

      Plaintiff,

      v.

ANDREW SAUL,

      Defendant.

CIVIL ACTION NO.  3:20-cv-00265

(SAPORITO, M.J.)

### **MEMORANDUM**

This is an action brought under 42 U.S.C. §405(g), seeking judicial review of the Commissioner of Social Security's ("Commissioner") final decision denying Magdalena Diaz's ("Diaz") claim for disability insurance benefits under Title II and XVI of the Social Security Act.  The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 10).

For the reasons stated herein, we will affirm the decision of the Commissioner.

## I.    *Background and Procedural History*

Diaz, is an adult individual, born on November 10, 1966.  (Tr. 94).  Diaz was forty-eight years of age at the time of her alleged onset of

disability, which made her a "younger person" under the Commissioner's regulations whose age generally does not affect her ability to adjust to other work.  Subsequently, Diaz transitioned to the age category of "closely approaching advanced age."

On March 1, 2017, Diaz protectively filed her application for benefits under Titles II and XVI of the Social Security Act. In both applications, she alleged that she became disabled on July 18, 2015. (Tr. 75). Diaz's alleged impairments included:  right shoulder and neck pain, two spurs in neck and shoulder, major depressive disorder, anxiety, high blood pressure, high cholesterol, degenerative disc disease, personality disorder, and headaches.  (Tr. 214). Her claims were initially denied on June 30, 2017. On July 28, 2017, Diaz filed a written request for an administrative hearing.  Her request was granted.  On September 4, 2018, Diaz appeared and testified at a hearing before Administrative Law Judge ("ALJ") Randy Riley, in Harrisburg, Pennsylvania. Diaz was represented at the hearing by Jason Schibinger, Esquire.  Additionally, Vocational Expert ("VE") Paul A. Anderson also appeared and testified. (Tr. 75, 93).

On November 23, 2018, the ALJ issued an unfavorable decision in which he concluded that, considering Diaz's age, education, work

experience, and residual functional capacity, and based on the testimony of the vocational expert, Diaz was capable of making an adjustment to other work that exists in significant numbers in the national economy.  (Tr. 85). Diaz then filed a timely complaint on February 13, 2020, in this court. (Doc. 1).  The Commissioner's timely answer to the complaint was filed April 16, 2020.  (Doc. 4).

This matter has been fully briefed by the parties and is ripe for decision.  (Docs. 13 and 14).

## II.    *Statement of Facts*

At the time of the hearing, Diaz lived with her husband in Lebanon, Pennsylvania, which is in the Middle District of Pennsylvania. She has a high school education.  (Tr. 94).

At her administrative hearing, Diaz stated that she was a housekeeper when she injured herself in 2010.  (Tr. 105).  Diaz stated she needs help from her husband to get dressed.  She is able to shower on her own, but needs help washing her hair because of impairment to her hand, neck and shoulder movement. (Tr. 95).  She stated that she does not cook or shop in stores, and only washes her own dishes.  She is unable to vacuum or take out the trash.  (Tr. 96).  She stated that she does not have

a driver's license and her daughter drives her where she needs to go.  (Tr. 96).

Diaz is able to climb stairs, bend over and touch her toes.  She is able to squat with pain in her neck and shoulders.  (Tr. 96).  She stated that she would be able to walk two blocks before having to sit down, and she could stand for ten minutes before having to sit down due to pain in her neck and shoulder.  She stated she could sit for 10 to 15 minutes before having to get up.  (Tr. 97).   Diaz stated she suffers from right hip pain. (Tr. 101).

Diaz stated that her medications cause drowsiness and cluelessness to the point where she is unable to concentrate.  (Tr. 98).  She stated that she lies down during the day because sitting and standing for long periods of time causes her pain.  (Tr. 99).  She is unable to lift or carry heavy items with her right hand because of the pain in her right shoulder.  (Tr. 99-100). She stated her neck pain is worse on the right side and her pain is in her right shoulder. (Tr. 100-03).

Diaz stated that she had neck surgery to ablate the nerves in her neck.  She stated she continues to have pain, and on a scale of one to ten, her pain is a ten.  She stated that it has not improved since the surgery.

(Tr. 101).  She tried physical therapy and injections for the pain, to no avail.  (Tr. 102).  She had left wrist surgery for carpal tunnel syndrome and stated that the surgery did not help.  She continues to wear a brace every day.  (Tr. 102-03).  In addition, Diaz stated she had physical therapy on her left hand and wrist which did not help.  (Tr. 103).  She stated her pain is in her right shoulder.  (Tr. 103).  Diaz stated that from when she wakes up to going to bed, she lays down almost all day.  (Tr. 111).

Diaz stated that she does not go anywhere on a regular basis other than to the grocery store with her husband and to doctor appointments. She no longer goes to church because she would need to sit down.  (Tr. 104).  Diaz stated that her  daughter helps her clean, sweep and mop the floors. (Tr. 104).

Diaz stated that she sees a therapist, Simrit Kahlon, and a psychiatrist, Felicia DeJesus, M.D., every other week for depression.  (Tr. 105-06).  At the time of the administrative hearing, Diaz's medications were Latuda and Trintellix.  She stated she has panic attacks approximately two times per month that last approximately one-half hour. She stated she has trouble sleeping due to pain.  She suffers with crying spells  three times a week due to depression.  (Tr. 107-08).  She stated she

hears voices that scare her, has feelings of helplessness, hopelessness, and irritability, has racing thoughts, negative thoughts, thoughts of harming herself, and issues with memory, concentration, and focus. (Tr. 108-09). She has trouble following written or verbal instructions and she has nightmares and flashbacks of when her grandfather abused her. (Tr. 110).

## I.    *Standard of Review*

When reviewing the denial of disability benefits, the Court's review is limited to determining whether those findings are supported by substantial evidence in the administrative record. *See* 42 U.S.C. § 405(g) (sentence five); *id*. § 1383(c)(3); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an

adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before the Court, therefore, is not whether the claimant is disabled, but whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal

matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

To receive disability benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *id.* § 1382c(a)(3)(A); *see also* 20 C.F.R. § 404.1505(a); *id.* § 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment[1] that makes it impossible to do his or her previous work or any other substantial gainful activity[2] that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); *id.* § 1382c(a)(3)(B); 20 C.F.R. § 404.1505(a); *id.* § 416.905(a).

The Commissioner follows a five-step sequential evaluation process in determining whether a claimant is disabled under the Social Security

---

[1] A "physical or mental impairment" is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3); *id.* § 1382c(a)(3)(D).

[2] "Substantial gainful activity" is work that (1) involves performing significant or productive physical or mental duties, and (2) is done (or intended) for pay or profit. 20 C.F.R. § 404.1510; *id.* § 416.910.

Act. 20 C.F.R. § 404.1520(a); *id.* § 416.920(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment;[3] (4) whether the claimant is able to do past relevant work, considering his or her residual functional capacity ("RFC");[4] and (5) whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. *Id.* § 404.1520(a); *id.* § 416.920(a). The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or her from doing past relevant work. 42 U.S.C. § 423(d)(5); *id.* § 1382c(a)(3)(H)(i); 20 C.F.R. § 404.1512; *id.* § 416.912; *Mason*, 994 F.2d at 1064. Once the claimant has established at step four that he or she cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist

---

[3] An extensive list of impairments that warrant a finding of disability based solely on medical criteria, without considering vocational criteria, is set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1.

[4] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of his or her impairment(s) and any related symptoms (e.g., pain). 20 C.F.R. § 404.1545(a)(1); *id.* § 416.945(a)(1). In assessing a claimant's RFC, the Commissioner considers all medically determinable impairments, including those that are not severe. *Id.* § 404.1545(a)(2); *id.* § 416.945(a)(2).

in significant numbers in the national economy that the claimant could perform consistent with his or her RFC, age, education, and past work experience. 20 C.F.R. § 404.1512(f); *id.* § 416.912(f); *Mason*, 994 F.2d at 1064.

## IV.  Discussion

### a. The ALJ's decision denying Diaz's claim for disability.

In his November 23, 2018, written decision denying Diaz's claims, the ALJ found that Diaz meets the insured status requirements of the Social Security Act through June 30, 2017. (Tr. 78).  At step one, the ALJ found that Diaz had not engaged in substantial gainful activity since July 18, 2015, her alleged onset date.  (Tr. 78).  At step two, the ALJ found that Diaz had the following medically determinable severe impairments: degenerative disc disease, degenerative joint disease of the right shoulder and left wrist; depression; anxiety; and personality disorder. (Tr. 78).  At step three, the ALJ found that Diaz does not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Between steps three and four of the sequential evaluation process, the ALJ assessed Diaz's RFC.  After evaluating the relevant evidence of

record, the ALJ found that Diaz had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following limitations

> She can frequently stoop, kneel, crouch, and climb ramps and stairs. She can occasionally climb ladders, ropes, or scaffolds and perform fine manipulation with her left upper extremity. She has the mental capacity for work limited to simple routine repetitive tasks in a work environment free from fast paced production involving only simple work-related decisions with few, if any, workplace changes. She can occasionally interact with supervisors.

(Tr. 80).

In making his factual findings with respect to Diaz's RFC, the ALJ was required to evaluate all symptoms and to the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. §§ 404.1529 and 416.929 and Social Security Ruling 16-3p, and the ALJ also considered the medical opinions in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927.

At step four of the five-step process, the ALJ determined that Diaz was unable to perform her past relevant work as a janitor which is actually and generally performed at the medium exertional level. Diaz's

RFC is now limited to less than a full range of light work. Therefore, she is unable to perform her past relevant work as actually or generally performed. 20 C.F.R. §§ 404.1565, 416.965.

It is the claimant who bears the initial burden of proving the existence of a disability. 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512; *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir. 1979). Once the claimant has established at step four that she cannot do any work she has done in the past because of her impairments, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy which the claimant could perform consistent with her RFC, age, education, and past work experience. *Rossi*, 602 F.2d at 57.

According to the testimony given by the vocational expert, a significant number of jobs exist in the national economy for an individual of Diaz's age, education, work experience, and RFC as determined by the ALJ. (Tr. 20, 83). After considering the testimony by the VE, the ALJ determined that Diaz would be able to perform the requirements of representative occupations such as: conveyor line bakery worker, DOT #524.687-022, with 38,000 jobs available nationally; bottling line attendant, DOT # 920.687-042, with 61,000 jobs available nationally; and

cashier II, DOT # 211.462-010 with 750,000 jobs available nationally. (Tr. 85).  The above listed occupations are classified as unskilled work at the light exertional level.  (Tr. 85).

Based on this information, the ALJ concluded that Diaz could engage in work that existed in significant numbers in the national economy despite her medically determinable impairments.

### b. Substantial Evidence Supports the ALJ's RFC Assessment.

Diaz's first claim of error challenges the ALJ's RFC assessment. Specifically, Diaz argues that the ALJ failed to consider the limitations for her determined severe impairments. (Doc. 13, at 11).

The Court of Appeals has ruled that the ALJ—not treating or examining physicians or state agency consultants—must make the ultimate disability and RFC determinations. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). The RFC is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities despite the limitations caused by his or her impairment(s). 20 C.F.R. § 404.1545(a); *see also Burnett v. Comm'r of Soc. Sec.*, 220 F.3d at 112, 121 (3d Cir. 2000). In determining the RFC, the ALJ must consider all the evidence of record, including medical signs and

laboratory findings, daily activities, medical source statements, and a claimant's medical history. Soc. Sec. Ruling 96-8p, 1996 WL 374184, at *5; *see also Mullin v. Apfel*, 79 F. Supp. 2d 544, 548 (E.D. Pa. 2000). An ALJ's RFC findings must be supported by the medical evidence. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986). The ALJ, however, is only required to include limitations credibly established by the medical evidence and not every limitation alleged. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005).

The Court's "review of the ALJ's assessment of the [claimant]'s RFC is deferential," and the "RFC assessment will not be set aside if it is supported by substantial evidence." *Black v. Berryhill*, No. 16-1768, 2018 WL 4189661 at *3 (M.D. Pa. Apr. 13, 2018); *see also Martin v. Comm'r of Soc. Sec.*, 547 F. App'x 153, 160 (3d Cir. 2013) ("We examine the ALJ's conclusions as to a claimant's RFC with the deference required of the substantial evidence standard of review." (internal quotation marks omitted)).

Diaz contends that the ALJ failed to consider the documented and diagnosed issues regarding her mental health. The ALJ acknowledged Diaz's difficulty with remembering, completing tasks, concentrating,

following instructions, handling stress, changes in routine, and noted that Diaz testified to hearing voices and having crying spells.  (Tr. 81).  He noted the treatment records show largely benign mental status findings, including good eye contact, normal speech, concrete and coherent thought process, good cognition and memory, and normal behavior, insight, and judgment.  (Tr. 82, 540, 553, 673, 675, 677, 679, 681, 683, 685, 687, 689, 691, 726, 740, 754, 782, 789, 799, 805, 832).  In addition, he noted that the record lacks evidence that Diaz ever received inpatient mental health treatment or referral to crisis intervention, and that her daily activities were inconsistent with her subjective complaints.  He noted that she is able to attend to her personal hygiene, prepare meals, walk to medical appointments, watch television, and manage money, and she has no difficulty with social interaction.  (Tr. 82-84).

With regard to her panic attacks, Diaz testified that she has panic attacks, but the ALJ pointed out that there is only one mention of panic attacks in the medical records that were before the ALJ.  Moreover, that October 2016 treatment note stated that Diaz *denied* panic attacks.  (Tr. 535).

The ALJ reviewed and noted the record evidence of Felicia DeJesus, M.D., and Simnt Kahlon, PA-C, who stated that Diaz had mild limitations with understanding and memory, moderate limitations with sustained concentration and persistence, moderate limitations with social interaction, and moderate limitations with adaptation. (Tr. 657-58, 813-15).

With regard to Diaz's mental health impairments, the ALJ considered the opinion of state agency psychological consultant Emmanuel Schnepp, Ph.D., and afforded his opinion "partial" weight. (Tr. 83). Dr. Schnepp opined that Diaz had no severe limitations in understanding, remembering, or applying information; mild limitations interacting with others, or adapting or managing herself, and moderate limitations concentrating, persisting, or maintaining pace. (Tr. 83).

Although the ALJ found that Diaz had moderate limitations in all of the "paragraph B" functional areas, her impairments did not cause at least two "marked" limitations or one "extreme" limitation. Thus, the paragraph B criteria were not satisfied.

Additionally, the treatment notes that Diaz cites were submitted after the ALJ's decision. The ALJ pointed out that Diaz submitted or

informed the ALJ about additional evidence less than five business days before the scheduled hearing date. The ALJ declined to admit this evidence as the requirements of §§ 404.935(b) and 416.1435(b) were not met. The Court can only look at evidence that was actually before the ALJ in determining whether the ALJ's decision was supported by substantial evidence. Diaz is relying on untimely produced evidence that was not before the ALJ for decision. In this case, Diaz has made no attempt to demonstrate that this evidence is new, material, or that there is good cause for us to remand for consideration of it.

It is the claimant's burden to provide "some justification for the failure to acquire and present such evidence to the [ALJ]." *Szubak v. Sec'y Health & Hum. Servs.*, 745 F.2d 831, 833 (3d Cir. 1984) (per curiam). Diaz has not offered any valid justification for her failure to acquire this evidence and present it to the ALJ. Accordingly, Diaz has failed to satisfy the statutory requirements for a sentence six remand. Thus, we are precluded from considering the additional evidence.

With regard to Diaz's physical impairments, the ALJ considered the opinions of state agency medical consultants, Josie Henderson, M.D. (Tr. 82). Dr. Henderson opined that Diaz was capable of performing work at

the light exertional level, involving frequent stooping, kneeling, crouching, climbing ramps and stairs, and occasionally climbing ladders, ropes, or scaffolds.  The ALJ afforded the opinion great weight as it is consistent with Diaz's activities of daily living. The ALJ concluded that while the opinion reflected appropriate areas of limitation, the ALJ found that Diaz is slightly less limited to occasional fine manipulation with her upper left extremity.  (Tr. 82)

In crafting the RFC, the ALJ considered all of Diaz's physical and mental health impairments, including Diaz's non-severe impairments of carpal tunnel syndrome, plantar fasciitis, achilles tendonitis, hyperglycemia, hypertension, and gastro esophageal reflux disease.  The ALJ explained, however, that despite evidence of mental health impairments, the medical evidence revealed that Diaz has the capacity for work limited to simple routine repetitive tasks in a work environment free from fast-paced production involving only simple work-related decisions with few, if any, workplace changes and she can occasionally interact with supervisors.  (Tr. 82).

Lastly, the ALJ considered other evidence in crafting the RFC, including Diaz's own statements. For example, Diaz stated in her Function

Report that she could not work because of the pain in her shoulder and neck.  She has difficulty sleeping, lifting, squatting, bending, standing, reaching, kneeling, and climbing stairs.  She must rest for a minute or two after walking two blocks, can stand for ten minutes, sit for ten to fifteen minutes, lays most of the day and has pain in both of her arms.  (Tr. 354-61). However, despite alleging disabling symptoms stemming from her physical and mental impairments, Diaz described her daily activities in terms that were not wholly disabling. For example, Diaz reported that she could care for most of her personal needs; she could prepare simple meals, ride in cars, walk to medical appointments, and watch television.  (Tr. 354-61).

Here, we find that the ALJ's RFC assessment is supported by substantial evidence.

### c.   *The ALJ did not err in failing to consider Diaz's non-severe impairments.*

At step two of the five-step sequential evaluation process, the ALJ must determine whether a claimant has a medically determinable impairment or a combination of impairments that is severe. 20 C.F.R. §§ 404.1520(a), 416.920(a). An impairment or combination of impairments is severe if it significantly limits a claimant's physical or mental ability to do

basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). The ALJ must "consider an individual's symptoms and functional limitations to determine whether his or her impairment(s) is severe unless the objective medical evidence alone establishes a severe medically determinable impairment or combination of impairments." Soc. Sec. Ruling 16-3p, 2017 WL 5180304, at *11 (eff. Mar. 28, 2016). The ALJ must "evaluate the intensity and persistence of an individual's symptoms such as pain and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." Rescission of Social Security Rulings 96-3p and 96-4p, 83 Fed. Reg. 27,816 (June 14, 2018).

It is well-established that the ALJ—not treating or examining physicians or state agency consultants—must make the ultimate disability and RFC determinations. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). Further, where the ALJ's decision in a social security disability benefits case is explained in sufficient detail to allow meaningful judicial review and the decision is supported by substantial evidence, a claimed error may be deemed harmless. *Richards*, 223 F. Supp. 3d at 304.

Typically, any error in failing to find a severe impairment at step two would be a "harmless error" if the ALJ continued with the analysis,

proceeding on to step three, as he did here. *See Salles v. Comm'r of Soc. Sec.*, 229 Fed. App'x 140, 145 n.2 (3d Cir. 2007). Regardless, we find that the ALJ did not err in failing to find Diaz's tarsal tunnel syndrome, planter fasciitis, achilles tendonitis, right hip pain, and neck pain non-severe. The ALJ carefully considered the medical record in its entirety. The ALJ did find and discuss Diaz's degenerative disc disease of the cervical spine (the cause of her neck pain) severe. (Tr. 78). We note that the records before the ALJ contained no records of hip pain during the relevant period. The only mention of hip pain was during the administrative hearing. (Tr. 101). Diaz points out in her brief the ongoing hip pain, but the ALJ found no medical records confirming ongoing hip pain.

The ALJ discussed Diaz's left foot pain and pointed out that she had surgery prior to the relevant period along with physical therapy. (Tr. 78). Diaz reported on May 4, 2016, at a follow up for her heel pain that she was a year out from her left tarsal release, Baxter's nerve release, and plantar fasciectomy and that she continued to have some pain but was 90% better. She was happy with her results and had been able to do all of her normal activities. She had little to no pain in that area. Notes show that she was

advised that she could return to normal activities and she could return on as as-needed basis.

The claimant bears the burden of presenting "medical findings equivalent in severity to all the criteria for the one most similar impairment" in order to qualify for benefits through a showing that an impairment, or combination of impairments, is equivalent to a listed impairment. *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990). An impairment, no matter how severe, is not sufficient if it only meets or equals some of the criteria for a listed impairment. *Id*. Meeting or equaling a listing cannot be proven solely on the basis of a diagnosis. 20 C.F.R. §§ 404.1525(d), 416.925(d).

20 C.F.R. Part 404, Subpart P, Appendix 1, lists descriptions of the severity of impairment for each major body system that is considered to be severe enough to prevent a claimant from doing any gainful activity regardless of the claimant's age, education, or work experience. 20 C.F.R. §§ 404.1525(a), 416.925(a). At step three of the sequential evaluation process, the ALJ considers whether the combination of the claimant's medically determinable impairments meets or equals the severity of one of the impairments in this listing of impairments. 20 C.F.R. §§

404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If a claimant has an impairment that meets the twelve-month durational requirement, and meets or equals all the criteria of an impairment in the listing of impairments, the claimant is found disabled.  *Id.*

> ### d.   *The ALJ properly considered all treating source statements and the opinions.*

Diaz argues that the ALJ erred by failing to properly consider her treating source statements, and opinion of the consultative physician compared to the opinion of the state agency consultant. (Doc. 13 at 2).

There are two categories of medical source opinions: "acceptable medical sources" and "other sources."  20 C.F.R. §§ 404.1513, 416.913. Only an acceptable medical source can qualify as a "treating source."  20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).  "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment[s], including [ ] symptoms, diagnosis and prognosis, what [the claimant] can still do despite [the] impairment[s], and [ ] physical or mental restrictions."  20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1).  A treating source's medical opinion will be afforded controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with

the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). However, "[o]pinions on some issues . . . are not medical opinions . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case." 20 C.F.R. § 404.1527(d), 416.927(d). An opinion that the claimant is disabled is explicitly noted in the regulations as an example of such an opinion that is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(1). 416.927(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.").

It is well-established that the ALJ, not the treating or examining physicians or state agency consultants, must make the ultimate disability and RFC determinations. *Slotcavage v. Berryhill*, No. 3:18-CV-1214, 2019 WL 2521634, at *8 (M.D. Pa. June 3, 2019). Thus, where the opinion of the treating physician conflicts with that of other sources, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." *Id.* Furthermore, the ALJ must indicate in his decision which evidence he had rejected and which he is relying on as the basis for his finding. *Id.* It is equally clear, that an ALJ may not unilaterally reject all

medical opinions in favor of the ALJ's own subjective impressions. *Id.* Therefore, provided that the decision is accompanied by an adequate rationale, it is the province and the duty of the ALJ to choose which medical opinions and evidence deserve greater weight. *Id.* An ALJ may give an opinion less weight or no weight if it does not present relevant evidence or a sufficient explanation to support it, or if it is inconsistent with the record as a whole. 20 C.F.R. §§ 404.1527(c), 416.927(c).

Here, the ALJ afforded "'little weight" to Dr. Sherpa's physical residual functional capacity questionnaire as it was a checkbox form. Checkbox opinions are considered weak evidence at best. *See Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best . . . . [w]here these so-called reports are unaccompanied by thorough written reports, their reliability is suspect."); *Smith v. Astrue*, 359 Fed. App'x 313, 316 (3d. Cir. 2009); *Prokopick v. Comm'r of Soc. Sec.*, 272 Fed. App'x 196, 198 (3d Cir. 2008); *Long v. Colvin*, Civ. No. 1:14-2192, 2016 WL 1320921, at * 9 (M.D. Pa. Apr. 5, 2016). *See generally* 20 C.F.R. § 404.1527(c)(3) (discussing supportability). This is especially true, where, as here, the checkbox form contained little, if any, narrative explanation to

support the limitations assessed.

Where no medical opinion is entitled to controlling weight, the Commissioner's regulations direct the ALJ to consider the following factors, where applicable, in deciding the weight given to any non-controlling medical opinion: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the extent to which the source presented relevant evidence to support his or her medical opinion, and the extent to which the basis for the source's conclusions was explained; the extent to which the source's opinion is consistent with the record as a whole; whether the source is a specialist; and any other factors brought to the ALJ's attention. 20 C.F.R. §404.1527(c).

Furthermore, the ALJ's articulation of the weight accorded to each medical opinion must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter*, 642 F.2d at 704. This principle applies with particular force to the opinion of a treating physician. *See* 20 C.F.R. § 404.1527(c)(2)("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."). "Where a conflict in the evidence exists,

the ALJ may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (quoting *Mason*, 994 F.2d at 1066)); *see also Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000).

Although Dr. Sherpa and Diaz had a long relationship as physician/patient, the ALJ found that Dr. Sherpa's opinions were not supported by his own treatment notes. Regulations and case law are clear that a treating relationship alone is not enough to compel an ALJ to accord an opinion controlling weight.   *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Brown*, 649 F.3d at 197 n.2.   To be a "medical opinion" entitled to "controlling weight," an opinion must come from a "treating source," it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and it must be "not inconsistent with the other substantial evidence in your case record." 20 C.F.R. § 404.1527(a)(2), (c)(2); Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *2. Under the Social Security regulations in effect at the time of the ALJ's decision in this case, a "treating source" is defined as a licensed physician, psychologist, or other acceptable medical source "who provides you, or has provided you, with medical treatment or evaluation and who has, or has

had, an ongoing treatment relationship with you." 20 C.F.R.

§ 404.1527(a)(2); *see also id.* § 404.1502(a) (defining "acceptable medical

source"). As to what constitutes an "ongoing treatment relationship," the

regulation states:

> Generally, we will consider that you have an ongoing
> treatment relationship with an acceptable medical source
> when the medical evidence establishes that you see, or
> have seen, the source with a frequency consistent with
> accepted medical practice for the type of treatment and/or
> evaluation required for your medical condition(s). We
> may consider an acceptable medical source who has
> treated or evaluated you only a few times or only after
> long intervals (e.g., twice a year) to be your treating
> source if the nature and frequency of the treatment or
> evaluation is typical for your condition(s).

*Id.* § 404.1527(a)(2).

If not well-supported by medically acceptable clinical and diagnostic

techniques or inconsistent with other substantial evidence in the case

record, a treating source medical opinion is nevertheless entitled to

deference. Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *4. Ordinarily, it

will be afforded "great weight.*" See id.* at *2; *Morales v. Apfel*, 225 F.3d

310, 317 (3d Cir. 2000). *See generally* 20 C.F.R. § 404.1527(c) (detailing

factors considered in evaluating weight given to a medical opinion).

Here, the ALJ gave "little weight" to Dr. Sherpa's opinion that Diaz

was able to do less than even a full range of sedentary work and "partial weight" to the opinions of Diaz's psychiatrist, Felicia DeJesus, M.D., and Simnt Kahlon, PA-C, both of whom placed Diaz under limitations that, would have rendered her entirely unemployable. However, these are not medical opinions, but rather opinions on whether Diaz is *disabled*, an issue expressly reserved to the Commissioner. *See id.* § 404.1527(d)(1); *Dixon v. Comm'r of Soc. Sec.*, 183 Fed. App'x 248, 251 (3d Cir. 2006) ("[O]pinions on disability are not medical opinions and are not given any special significance."); *Snow v. Astrue*, Civil Action No. 12-5 Erie, 2013 WL 501377, at *8 (W.D. Pa. Jan. 15, 2013) ("The ultimate determination as to whether a claimant is disabled is reserved to the Commissioner."). "Medical sources . . . sometimes offer opinions . . . about an individual's ability to do past relevant work or any other type of work. Because these are administrative findings that may determine whether an individual is disabled, they are reserved to the Commissioner. . . . [T]hey can never be entitled to controlling weight or given special significance." Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *5; *see also Dixon*, 183 Fed. App'x at 252 (finding that treating source opinions stating that a claimant was unable to do specific jobs "reflected the treating professionals' opinions on

disability, [and] they were properly afforded no special significance");
*Snow*, 2013 WL 501377, at *8 ("Since medical doctors typically lack the
vocational expertise needed to ascertain whether an individual's
limitations would preclude the performance of specific jobs, their opinions
as to whether a claimant is 'disabled' carry little weight. . . . Questions
pertaining to employer expectations are more appropriately addressed by a
vocational expert.").

Therefore, we find that the ALJ properly considered all treating
source statements and opinions.

> ### e. The ALJ did not err in his consideration of the Medical-Vocational Guidelines concerning Diaz's age.

Lastly, Diaz argues that the ALJ erred by failing to properly consider
the Medical-Vocational Guidelines concerning her age.  (Doc. 13, 23-24).
Specifically, Diaz argues that she should have been found disabled as of
the date of her 50th birthday because she is only capable of performing no
more than sedentary work. (*Id.*)

The ALJ's findings at steps four and five are based on Diaz's residual
functional capacity, age, education, and work experience in conjunction
with the Medical-Vocational Guidelines. In order to make this

determination, the ALJ relied upon the VE's testimony.  Here, the VE testified that given all of the factors, Diaz's RFC, age, education, and work experience, Diaz was capable of making a successful adjustment to other work that existed in significant numbers in national economy.  Diaz was able to perform the requirements of the following occupations:    bakery worker, conveyor line, DOT # 524.687-022, light work, 48,000 jobs nationally; bottling line attendant, DOT #920.687-042, light work, 61,000 jobs available nationally, and cashier II, DOT # 211.462-010, light work, with 750,000 jobs available nationally. Because Diaz was able to adjust to "other work," the ALJ concluded that Diaz did not meet the statutory definition of disability under the Social Security Act.

The ALJ posed hypothetical questions to the VE with further limitations, including being limited to simple, routine, repetitive tasks in a low-stress job with only occasional decision-making and occasional work-setting changes, and the VE testified that the same positions would remain available without any change in numbers.  Given all these factors, the ALJ's finding that Diaz had the ability to adjust to other work, is supported by substantial evidence, and is in compliance with the Medical Vocational Guidelines.

Diaz further contends that the ALJ erred in not considering her multiple physical impairments and other conditions that the ALJ should have considered severe in nature. We find that this argument also fails.

Here, we find that the ALJ did not err in his consideration of the Medical-Vocational Guidelines with respect to Diaz's age. First, after consideration of the medical record in its entirety, the ALJ concluded that Diaz could perform a range of *light* work, *not* less than the full range of sedentary work. (Tr. 80). The ALJ considered Diaz's age under the Medical-Vocational Guidelines, coupled with his RFC finding of light work. (Tr. 39.) For example, the ALJ considered Diaz's age under two different age categories, including Rule 202.20 ("younger individual" age 45-49) and Rule 202.13 ("closely approaching advanced age"), the latter accounting for Diaz's age change upon her 50th birthday. (*Id.*) Under both categories, however, Diaz would be declared not disabled. (*Id.*)

Here, we find that the ALJ's decision appropriately determined that Diaz's allegations regarding the limiting effects of her condition were not supported by the record evidence. The ALJ's RFC is supported by record evidence and by Diaz's own reported activities.

An appropriate Order will follow.


**_s/Joseph F. Saporito, Jr._**
JOSEPH F. SAPORITO, JR.
U.S. Magistrate Judge

Dated:  March 26, 2021